IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| LYNDEE HARRISON, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | Case No. CIV-14-1219-R |
|  | ) |  |
| STATE FARM FIRE AND | ) |  |
| CASUALTY COMPANY, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

### ORDER

Before the Court is Defendant State Farm Fire and Casualty Company's Motion for Summary Judgment. Doc. No. 20. Plaintiff responded in opposition to the motion. Doc. No. 26. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute is genuine when a reasonable jury could find in favor of the nonmoving party on the issue." *Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 712 (10th Cir. 2014) (citations omitted). All facts and reasonable inferences therefrom are construed in the light most favorable to the nonmoving party. *Id.* at 712-13. Having considered the parties' submissions, the Court grants the motion.

### Background

Plaintiff's homeowner's policy states that Defendant "will pay only the actual cash value at the time of the loss of the damaged part of the property," and "when the repair or replacement is actually completed, [Defendant] will pay the covered additional amount [Plaintiff] actually and necessarily spend[s] to repair or replace the damaged part of the

property," up to the policy limit. Doc. No. 20, Ex. 1, at 18. Plaintiff made a claim on May 22, 2013 for damage to her home caused by the May 20 tornado in Moore, Oklahoma. Doc. No. 26, at 8. She asserts that although Defendant paid to have her roof repaired, it did not pay for all of the damage covered by her policy. *Id.* at 5, 8. On May 22, Defendant gave Plaintiff a $500 advance payment, and on May 30, paid an additional $13,417.41. *Id.* at 8-9, 11. Plaintiff also received $10,902.67 to pay Salazar Roofing for repairing her roof, and $1,715.25 for the roof and gutters replacement cost benefits. *Id.* at 13-14.

In June and July, Plaintiff raised concerns about additional unpaid damage and Defendant asked her to provide a contractor's estimate of the alleged damage. *Id.* at 12-13. On August 20, Plaintiff notified Defendant that she had retained an engineer, Kevin Bahner, to inspect the property. *Id.* at 13. Mr. Bahner prepared a report that was provided to Defendant. *Id.* at 14. Defendant reviewed the report and scheduled another inspection of the property. *Id.* at 14-15. After the inspection, Defendant retained its own engineer. *Id.* at 15-16. On September 13, Defendant notified Plaintiff that it had determined that the living room carpet and padding needed to be replaced, and on September 16, gave Plaintiff an additional $1,498.68. *Id.* at 17-18.

On October 1, Defendant determined that based on its engineer's report and after revising its earlier estimate to account for additional repairs, it would pay Plaintiff an additional $4,786.24. *Id.* at 19-20. The new estimate, dated October 2, 2013, revised its earlier estimate dated May 30, 2013. *See* Doc. No. 26, Ex. 5, Ex. 11. In reviewing its engineer's report, Defendant also found that some of the damage to Plaintiff's home was

caused by changes in temperature and humidity and naturally occurring foundation movement, and concluded that not all of the damage for which Plaintiff sought payment was covered under the policy. Doc. No. 26, at 19-20. To date, not including the payment received to pay for the roof repair, Plaintiff has received $21,917.58 from Defendant. Plaintiff has sued Defendant for breach of contract, bad faith, negligence in the procurement of insurance, constructive fraud and negligent misrepresentation, negligence, and breach of fiduciary duty. Doc. No. 1, Ex. 1, at 3-13.

<u>Analysis</u>

A. **Breach of Contract**

1. **Repair Costs**

Defendant seeks summary judgment on Plaintiff's breach of contract claim. Doc. No. 20, at 8. To prevail on this claim, Plaintiff must prove "1) formation of a contract; 2) breach of the contract; and 3) damages as a direct result of the breach." *Digital Design Grp., Inc. v. Info. Builders, Inc.*, 24 P.3d 834, 843 (Okla. 2001) (footnote omitted).[1] Plaintiff contends that Defendant breached the insurance contract by failing to pay replacement cost benefits, despite Plaintiff having actually completed the repairs within the required timeframe. Doc. No. 26, at 7. To receive "any additional payments on a replacement cost basis," the insured "must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify [Defendant] within 30 days after the work has been completed." Doc. No. 20, Ex. 3, at 19

---

[1] Defendant argues that Plaintiff's claims for mold damage are not covered under the policy. Doc. No. 20, at 20. In response to the motion, Plaintiff states that she is not making a claim for mold damage. Doc. No. 26, at 6 n.1. Therefore, the Court does not address the mold issue.

(SF_1113). Defendant contends there is no evidence that Plaintiff advised Defendant that repairs were completed within two years of May 20, 2013, or that she informed Defendant of the repairs within thirty days of their completion. Doc. No. 27, at 9-10.

Plaintiff directs the Court to a letter dated October 20, 2014 from her counsel to Defendant that states, "Ms. Harrison's home is currently undergoing repairs from the tornado last year. If you, or your experts, wish to view the home, it needs to be done as soon as possible. Ms. Harrison is mitigating her damages by going ahead with the repairs. Should you have any questions, please do not hesitate to contact our office." Doc. No. 26, Ex. 12. Because this letter does not inform Defendant that the repairs are complete, it does not satisfy the 30-day notice requirement.

Plaintiff next directs the Court to her affidavit in which she states that Oklahoma Door and Dock Services, Inc. ("ODDS") repaired her garage door in June 2014 and Streeter Enterprises conducted repairs on the exterior of the home in October and November of 2014. Doc. No. 26, Ex. 2, ¶¶ 9-10. She attests that "[d]uring or immediately after Streeter Enterprises completed their work on the home, State Farm inspected the home's condition on November 6, 2014, [] took video of the home," and "had an opportunity to review the work performed by Streeter Enterprises and Oklahoma Door and Dock Services, Inc." *Id.* ¶ 11. Streeter Enterprises sent Plaintiff a final invoice on November 19, 2014 totaling $39,795.00 for the repairs, which Plaintiff's counsel provided to Defendant. *Id.* ¶¶ 12-13. Despite having received that invoice, Defendant made no additional payments. *Id.* ¶ 14.

With respect to ODDS' repair of the garage door in June 2014, there is no evidence that Plaintiff notified Defendant of that repair within thirty days of its completion. Plaintiff also produces no evidence of when she provided Defendant with the invoice she received from Streeter Enterprises on November 19. In its reply brief, Defendant produces a letter dated March 10, 2015, which references an enclosed CD that, according to Defendant, includes that invoice. Doc. No. 27, at 10, Ex. 2. This letter, dated almost four months after Plaintiff received the final invoice for the repairs, does not satisfy the 30-day notice requirement.

Although Plaintiff attests that Defendant inspected the home "during or immediately after" the Streeter Enterprises repairs were completed, this is also insufficient to satisfy the 30-day notice requirement. To establish a genuine dispute on this issue, Plaintiff must produce evidence that she notified Defendant within thirty days *after* the repairs were completed. Evidence that Defendant had an opportunity to review the repairs either before *or* after they were completed is not enough for a reasonable jury to find in Plaintiff's favor. As there is no evidence in the record that she notified Defendant within thirty days after the ODDS or Streeter Enterprises repairs were completed, Plaintiff has failed to demonstrate a genuine dispute on this issue.

2. **Unpaid Damage**

Plaintiff also asserts that Defendant breached the insurance contract by failing to pay for damage to her home caused by the May 20 tornado, including "the broken and racked windows, torn siding, cracked brick and mortar, and a damaged garage door." Doc. No. 26, at 5. She refers to this as the "Unpaid Damage," and contends that because

Defendant does not mention this damage in its motion, it does not satisfy its burden of proving that the damage was not covered under the policy. *Id.* at 5-6. In response, Defendant argues that Plaintiff's affidavit does not mention what damages it did not include in the last estimate that would create a genuine dispute on this issue. Doc. No. 27, at 4.

Plaintiff argues that because her policy is an "All Risk" policy, to recover, she "need only prove that her dwelling sustained an accidental direct physical loss; she need not prove what caused that loss. It is Defendant who bears the burden of proving that the 'cause' of Plaintiff's loss is a peril 'clearly and distinctly' excluded by the terms of the Policy." Doc. No. 26, at 22-23 (citation omitted); *see also Switzer v. State Farm Fire & Cas. Co.*, No. Civ.04 279 T, 2007 WL 841111, at *3 (W.D. Okla. Feb. 7, 2007) (applying the same burden-shifting framework). But the Court finds that implied in Plaintiff's burden to show that a loss occurred is the burden to show that coverage for that loss was *denied* by Defendant. Otherwise, insureds could survive summary judgment when the insured has covered all of their losses. Plaintiff has the burden, at the summary judgment stage, to cite to "particular parts of materials in the record" supporting her contention that there is a genuine dispute as to whether she suffered a loss that Defendant did not cover. *See* FED. R. CIV. P. 56(c)(1)(A). She has failed to do so in this case.

Plaintiff states in her response that she will refer to "broken brick and/or cracked masonry as indicative" of all the Unpaid Damage, but these are not the only items included on her final list of Unpaid Damage. Doc. No. 26, at 10 n.2. She notes that her deposition is not yet complete and that some of the remaining time will be spent on her

6

estimation of damages. *Id.* This is perhaps why Plaintiff fails to explain and produce evidence of what damages she sustained that Defendant failed to cover.

Plaintiff asserts that based on Mr. Bahner's report, she thought the water-damaged drywall, insulation, carpet, and pad needed to be replaced. Doc. No. 26, at 6 n.1. As noted above, Defendant gave Plaintiff $1,498.68 to replace the carpet and padding. *Id.* at 17-18. Furthermore, Defendant's October 2013 estimate takes into account payment for drywall[2] and insulation,[3] and Plaintiff does not indicate any additional damage this estimate does not take into account.

Plaintiff argues that Defendant failed to pay for "the broken and racked windows, torn siding, cracked brick and mortar, and a damaged garage door." Doc. No. 26, at 5. There is no citation to the record in support of this claim. Moreover, Defendant's final estimate dated October 2, 2013 includes payments for window[4] and siding[5] repair and/or replacement, detaching and resetting brick,[6] work with mortar,[7] and repair to the garage door.[8] Plaintiff states that Salazar Roofing provided Defendant with an estimate exceeding $68,000, but there is no citation to such an estimate in the record. Doc. No. 26, at 5. In her affidavit she lists the damage she believes the May 20 tornado caused, but does not state what damage Defendant did not cover. *Id.*, Ex. 2, ¶ 6. She merely states that this damage did not exist prior to May 20 and that she reported all of the damage to

---

[2] Doc. No. 26, Ex. 11, at 12, 15, 17, 20-21, 28.
[3] *Id.* at 12, 15, 17, 22, 30.
[4] Doc. No. 26, Ex. 11, at 16, 24, 32-33.
[5] *Id.* at 9, 23-24, 31-32.
[6] *Id.* at 7, 22, 29-30.
[7] *Id.* at 30.
[8] *Id.* at 8, 23.

7

Defendant. *Id.* ¶¶ 7-8. Plaintiff also states several times in her response brief that many of her damages "were never covered by Defendant giving rise to the instant coverage dispute for Unpaid Damage." Doc. No. 26, at 8; *see also id.* at 9-10 & n.2. But she does not include with these statements a list of the damages that were not covered, or a citation to the record demonstrating the damage for which Defendant failed to pay.

Plaintiff also states that she "has consistently argued that the Sanderson's estimate was not inclusive of all damages claimed by Plaintiff." *Id.* at 10. She then provides an example—the estimate "did not include broken brick or cracked masonry and did not allocate any insurance proceeds to repair and/or replace broken brick," but rather allocated only $127.03 to "clean tornado debris from brick on left elevation." *Id.* at 10-11. In support of this assertion, she cites to the estimate dated May 30, 2013. *Id.* As Defendant correctly points out, and as noted above, these items are included in its October 2013 revised estimate. Doc. No. 27, at 5; Doc. No. 26, Ex. 11, at 7, 22, 29-30.

Plaintiff contends that Mr. Bahner's report "is a summary of additional damages, as requested by Defendant on July 29, 2013, when Plaintiff attempted to submit Unpaid Damage claims telephonically." Doc. No. 26, at 14. That is an incorrect characterization of the report, which itself states that "[t]he purpose of the site visit was to visually observe and assess the condition of the house for structural damage" from the tornado, and the report lists "[t]he structural damage and issues observed from the visit." Doc. No. 26, Ex. 7, at 1. The report purports to include *all* of the damage Mr. Bahner observed, not merely the alleged additional damage that was not included in Defendant's estimate.

Furthermore, Mr. Bahner's report is dated August 16, 2013, *id.*, and Defendant's latest estimate is dated October 2, 2013, several weeks later, Doc. No. 26, Ex. 11, and Plaintiff provides no explanation as to what damage is listed in Mr. Bahner's report and not included in Defendant's revised estimate. To determine whether Plaintiff has produced evidence of Defendant's failure to pay for certain damages would require the Court to speculate as to what is missing from Defendant's October 2013 estimate, which the undersigned declines to do. *See Stewart v. Whitmire Distribution Corp.*, 53 F.3d 343, No. 94-1096, 1995 WL 243434, at *3 (10th Cir. Apr. 26, 1995) (unpublished) (finding that the plaintiff had not satisfied his summary judgment burden by failing "to show the district court what the disputed evidence was" and failing to direct the Circuit to the evidence in the record and declining "to speculate what evidence would support plaintiff's case")). Defendant's motion for summary judgment on Plaintiff's claim for breach of contract is granted.

### B. Bad Faith

Defendant also seeks summary judgment on Plaintiff's claim for breach of the duty of good faith and fair dealing. Doc. No. 20, at 8. To prevail on her bad faith claim, Plaintiff must prove that (1) she was entitled to coverage under the insurance policy, (2) Defendant had no reasonable basis for delaying payment, (3) Defendant did not deal fairly and in good faith with Plaintiff, and (4) Defendant's violation of its duty of good faith and fair dealing was the direct cause of Plaintiff's injury. *Ball v. Wilshire Ins. Co.*, 221 P.3d 717, 724 (Okla. 2009). Because the Court grants summary judgment for Defendant on Plaintiff's breach of contract claim, Plaintiff has failed to create a genuine

dispute as to whether she was entitled to coverage under the policy and that payment for such coverage was not provided. Therefore, the undersigned grants summary judgment for Defendant on Plaintiff's bad faith claim.

**C. Remaining Claims**

Finally, Defendant moves for summary judgment on Plaintiff's remaining claims. Doc. No. 20, at 8. In addition to breach of contract and bad faith, Plaintiff brought claims for negligence in the procurement of insurance, constructive fraud and negligent misrepresentation, negligence, and breach of fiduciary duty. Doc. No. 1, Ex. 1, at 5-13.[9] For all of these claims, Plaintiff must prove she suffered damages.[10] With no evidence that she suffered damages from the May 20 tornado that Defendant failed to cover, Plaintiff has not satisfied her burden of establishing a genuine dispute on any of these claims. Therefore, the Court grants summary judgment to Defendant on the above claims.

## Conclusion

In accordance with the foregoing, Defendant State Farm Fire and Casualty Company's Motion for Summary Judgment, Doc. No. 20, is GRANTED. Plaintiff's

---

[9] Although Plaintiff initially alleged that Defendant is liable on these claims, not solely the previously dismissed agent, Doc. No. 1, Ex. 1, ¶¶ 39, 48, 59, 64, it is unclear whether Plaintiff is still pursuing these claims against Defendant. *See* Doc. No. 26, at 5 (mentioning filing this action against Defendant only "for breach of contract and insurance bad faith"). To the extent Plaintiff is still pursuing these claims, she has failed to establish a genuine issue of fact, as explained above.

[10] *See Smith v. City of Stillwater*, 328 P.3d 1192, 1200 (Okla. 2014) ("There are three elements to a claim for negligence: 1) a duty owed by the defendant to protect the plaintiff from injury; 2) a failure to perform that duty; and 3) injuries to the plaintiff which are proximately caused by the defendant's failure to exercise the duty of care." (citations omitted)); *Howell v. Texaco Inc.*, 112 P.3d 1154, 1161 (Okla. 2004) ("To be actionable, both actual fraud and constructive fraud require detrimental reliance by the person complaining." (citation omitted)); *Swickey v. Silvey Cos.*, 979 P.2d 266, 269 (Okla. Civ. App. 1999) "[A]n agent is liable to the insured if, by the agent's fault, insurance is not procured as promised and the insured suffers a loss." (citations omitted)); *F.D.I.C. v. Grant*, 8 F. Supp. 2d 1275, 1299 (N.D. Okla. 1998) ("Damages are an essential element of a breach of fiduciary duty claim.").

Motion to Quash the Subpoena Issued to The Hartford by Defendant on May 29, 2015, Doc. No. 21, is DENIED as moot.

IT IS SO ORDERED this 10th day of July, 2015.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE